Commonwealth of Pennsylvania to use of G. Howell Finn, surviving and liquidating partner of Granville P. Quinn and G. Howell Finn, lately trading as Quinn & Finn, *v.* Andrew Comrey, E. S. Reinhold, W. H. Evans, Edward Gorman and Joseph Hughes, Appellants.

*Execution— Sheriff—Sale of leasehold—Negligence.*

A sheriff who sells a colliery leasehold together with the machinery in place, and upon failure of the purchaser to pay his bid allows the return day of the writ to pass by without putting the property up for resale, is liable to another execution creditor who is injured by his neglect, and he is not relieved by the fact that such execution creditor consented after the return day to the purchaser remaining in possession for a certain limited period for the purpose of obtaining the money with which to pay the sheriff.

*Execution—Sheriff—Return—Act of April 20, 1846.*

A sheriff after selling a colliery leasehold together with the machinery in place accepted the purchaser's receipt for the balance due, and made a return as is prescribed by the act of April 20, 1846, P. L. 411, in cases of sales of real estate to lien creditors. Exception was made to the return, and an auditor was appointed who reported that the sheriff had no right to take the purchaser's receipt inasmuch as the property sold was not real estate, and therefore not within the provisions of the act of April 20, 1846. No exception was taken by the sheriff to the auditor's report, and no appeal was taken by him from the order confirming it. Subsequently suit was brought against the sheriff by an execution creditor who was injured by his action in taking the purchaser's receipt. *Held*, (1) that the sheriff was a party to the proceedings before the auditor; (2) that the matter decided by the auditor was res judicata; (3) that a judgment against the sheriff in the action for damages should be sustained.

Argued Feb. 17, 1896. Appeal, No. 119, July T., 1895, by defendants, from judgment of C. P. Schuylkill Co., Jan. T., 1894, No. 17, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Assumpsit on sheriff's bond.

At the trial the court directed a verdict for the plaintiff **for** $949.96, reserving the question whether under the pleadings and evidence there could be any recovery by the plaintiff.

A verdict was rendered in accordance with the instruction of the court, and subsequently a motion was made for judgment for defendant non obstante veredicto. ENDLICH, J., of the 23d judicial district, specially presiding, filed the following opinion:

Conceding the truth of all the defendants' testimony, together with every inference capable of being drawn by the jury favorable to them from any part of the whole testimony, the material facts of this case are briefly these:

The defendant Comrey, in March, 1891, while sheriff of this county, was directed to levy certain executions issuing out of this court at the instance of this use plaintiff upon the property of Geo. W. Johnson et al., the writs being returnable to May term, 1891. There were other executions in his hands against the same parties, and after making levy under the writs of the use plaintiff, the sheriff, upon one of those earlier executions, on March 10, 1891, sold the property of Johnson et al., a colliery leasehold, together with the machinery in place, to one Silliman, the creditor in the execution on which the sale took place, for $6,000. The conditions of the sale called for payment in cash or resale, the purchaser to make up any deficiency in price in the latter event. Up to April 10, 1891, $3,000 were paid in by the purchaser, and subsequently $235.46 more. Before any of these payments were made, the property had been handed over to the purchaser, or at least virtually abandoned by the sheriff, who permitted the return day of the writs to pass without collecting the balance or putting the property up for resale, although he was urged from time to time to close up the matter. In this situation of affairs, some time after the middle of May or early in June, the sheriff received a communication, purporting to come from counsel for the use plaintiff, agreeing to a temporary possession of the property by Silliman (for the purpose of taking the water out of the colliery and selling it) and the deferring of payment of the balance of the purchase until July 1. But the money was not then paid, nor the property resold. In October, 1891, the sheriff, in lieu of payment, accepted Silliman's receipt for the balance still due (the various judgments held by him against Johnson et al. equalizing that amount) and thereupon made a return such as is prescribed by the act of April 20, 1846, P. L. 411, in cases of sales of real

estate to lien creditors, and also showing that the whole amount paid in in cash by the purchaser had been disbursed by the sheriff in payment of costs and preferred claims, wages, etc.   This return being on the same day excepted to on the ground that the sheriff's acceptance of Silliman's receipt was unauthorized, and that he was bound to collect the money and submit to the direction of the court as to its distribution, the court appointed an auditor to report the facts and proper distribution.   Notice of the audit was duly given, but whilst the sheriff's · counsel appeared at the audit, he does not seem to have appeared for the sheriff, but for other parties interested, among them Silliman.   In May, 1893, after defendant had gone out of office, the auditor filed his report, deciding, inter alia, that the sheriff had no right to take the purchaser's receipt, the property sold not being real estate and therefore not within the provisions of the act of 1846 ; treating the money for which the sheriff had given his receipt to Silliman as before him for distribution, and distributing to the use plaintiff $874.57 thereof.   Upon exceptions filed to this report by certain parties, not including the sheriff, the same was on July 3, 1893, confirmed absolutely by this court, per BECHTEL, J.   There was no appeal from this decision, and in November, 1893, this suit was brought upon the sheriff's bond, the cause of action, in the declaration as originally filed, being said to be the failure of the sheriff, after levy of plaintiff's execution and selling the property of Johnson et al. for $6,000, to bring the money into court as commanded by the writs issued at the instance of the use plaintiff, or to pay him the money coming to him upon his executions or any part of it. An amendment allowed April 30, 1894, reduces the claim from $2,000 as originally laid to $800, with interest from July 31, 1893, adding that that sum had been distributed, as above stated, to the use plaintiff as his share of the proceeds of said sale.

   Now, what answer is there, at this time, to this claim ?   It is certainly a fact, that the sheriff permitted Silliman to take possession of the colliery without compliance with the conditions of the sale, and that he allowed the return day of the use plaintiff's writs to pass by without putting the property up for resale or collecting the money which was payable immediately upon the sale.   Nor, in doing this, had he the consent of the use plain-

tiff. Whatever indulgence was allowed was granted after his rights against the sheriff had become perfected, could not have misled him, was in no way the inducement to his failure to perform his duty in season, was entirely without consideration, and cannot, for all these reasons, amount to a ratification of what had been done or not done before. Moreover, the indulgence was of a temporary character. It was to expire on July 1st. But the sheriff permitted that limit also to slip by and did nothing. And again, if there was any agreement between him and the use plaintiff for the extension of the period of payment, its very terms contemplated a collection of the money, a forthcoming of cash, at the end of it—the admitted purpose of the delay being to enable the purchaser to realize upon his purchase and get the wherewithal to pay for it. Surely, the sheriff cannot justify his failure to proceed on the basis of an understanding whose terms he proves himself to have violated and whose avowed purpose he frustrated by the acceptance of Silliman's receipt in lieu of cash, three months after the expiration of the limit fixed. If that was to be done, there was no occasion for any delay. It might as well have been done ten minutes as seven months after the sale. But it is said that he was protected by the fact that he made a return to the court showing what he had done, and thereby throwing upon the court the responsibility of declaring whether it was right or wrong, and making such order as was necessary to protect both him and the creditors. The general rule is that "every man must in the first instance interpret the law for himself in endeavoring to obey it:" Boom Co. v. Dodge, 31 Pa. 285, per LOWRIE, C. J. It was decided as far back as Mather v. McMichael, 13 Pa. 301, that the sheriff making distribution of the proceeds of a sale, does so upon his own responsibility. The return pointed out by the act of 1846 was intended for the benefit of the lien creditor purchaser: Franklin Twp. v. Osler, 91 Pa. 160, and unless required by him the sheriff is not bound to make it: Ibid. He may omit it at his own risk: Mark v. Osmer, 138 Pa. 1; Krumbharr v. Yewdall, 153 Pa. 476. If he does make it in a case contemplated by the act, and it is found to be based on error, the court may set aside the sale and order a resale (sec. 2). But where the act does not apply, it has no such power, simply for the purpose of saving the sheriff from liability for his mistake. How, then, in such a

case, can the sheriff by making a return which is not enjoined upon him, which has no status before the law, which is not responsive to his writ, which, in a word, is *no return at all*, protect himself against the consequences of the exercise by him of his discretion to make distribution upon his own responsibility? When he took Silliman's receipt in lieu of cash, he in substance and effect distributed to him so much of the proceeds of the sale. In the language of Mr. Justice PAXSON, in Re Bastian, 90 Pa. 472, " He has taken the responsibility, and is liable to suit on the part of the disappointed creditors. It will be a sufficient answer to such suits to show that he has applied the money as the law would apply it. If he has not, he is liable upon his official bond." These questions, in the present case, as well as the amount of the use plaintiff's damages, are res adjudicata by virtue of the decree of this court of July 3, 1893.

Assuming the identity of the parties, the question whether the principle of res adjudicata applies depends upon the identity of the matter in issue with that directly in issue in the former proceeding: Cavanaugh v. Buehler, 120 Pa. 441; Reading Iron Works' Est., 149 Pa. 182. The fundamental inquiry in the proceeding which culminated in the decree of July 3, 1893, was as to whether or not the sheriff had the right to accept Silliman's receipt in lieu of money. The main point of the decision was that he had not. The distribution follows as based upon that finding, and again necessarily involves it. There was no appeal from it. Its correctness it is neither necessary nor competent to inquire into now. " Good or bad, it is too late to contest the conclusion: " Rdg. I. Works' Est., ubi supra. Neither can it be said that the defendant was not a party to that proceeding, or unaffected by it. Ordinarily, where objections are made to a return under the act of 1846, and a proceeding results from them, it is doubtless true the sheriff is not to be regarded as a party to it; because those objections, as contemplated by the act (see sec. 2) properly go to the " right of the . . . purchaser . . . to the money mentioned in said return,"—involving the status or validity of his liens and like questions,—and as has been seen, the return is made for his benefit. But in this case, the objection was, besides, to the application of the statute itself,—to the right of the sheriff to

make any return under it,—to the fact of his making such a return instead of bringing the money into court,—to his failure to do the latter,—to his treating as realty what was asserted to be personalty. This raised an issue, not between the exceptants and the purchaser merely, but between the former and the sheriff, and was notice to the latter of that fact. He was therefore in every proper sense a party to the proceeding which followed for the determination of that issue. He might have appeared before the auditor, excepted to his decision, and appealed from the decree of the court: Morris v. Garrison, 27 Pa. 226. That he chose to do none of these things did not make him any the less a party, and as such bound by the result. Nor can he deny the validity and conclusive effect of the proceeding on the ground of want of jurisdiction in the court to enter upon it, because of the irrelevancy of the act of 1846. It was he who started the proceeding by making the return mentioned, as he declares, for the purpose of obtaining the decision of the court as to whether he had or had not the right to accept Silliman's receipt. The exceptions filed simply formulated the issue and put that question before the court for decision. It might have decided without the intervention of an auditor; but it had the clear right to refer the matter to an auditor, and to give its opinion upon the facts as they should be reported by him. Of course, if the act of 1846 did not apply, the proceeding could not be under it. But the presumption is that the court did not proceed under a statute that had no application: Albright v. Bldg. Ass'n, 102 Pa. 411, and that presumption is strengthened by the fact that, deciding adversely to the propriety of the payment of Silliman's judgment in full out of the proceeds, it did not undertake to set the sale aside and order a resale of the property as required in proceedings under the act of 1846. Moreover, the court, having a general jurisdiction in the distribution of the proceeds of sheriff's sales, it does not lie in the mouth of him who invoked that general jurisdiction for a specific purpose to question the validity of its exercise for that purpose: See Re Spring Street, 112 Pa. 258.

It seems clear to me that there is no escape from a recovery in this case. But there was an accidental error in the amount of it, due, no doubt, to the fact that the statement of plaintiff's claim in the declaration as amended was **overlooked**. That

amount is $800, with interest from July 31, 1893, making a total to the day of the verdict, Jan. 30, 1895, of $872.   The recovery cannot exceed the claim, and must be reduced accordingly; a matter about which there can be no difficulty since the verdict was by direction of the court.   As to the form of it, and of the judgment to be entered thereon, see Miltenberger v. Com., 14 Pa. 71; it was at the time agreed by counsel that it should be taken in the form in which it was taken, to be molded and conformed thereafter, if necessary, to the requirements of the statute.

And now, to wit, May 11, 1895, the motion for judgment non obstante veredicto is overruled; counsel may within ten days from this date agree in writing as to the form in which the verdict is to be entered as of the date of its rendition (reducing, however, the damages assessed to the use plaintiff to $872), said agreement to be without prejudice to any rights of the defendants; and thereupon, and upon payment of the verdict fee, it is ordered that judgment be entered upon the verdict.

*Error assigned* was in directing verdict for plaintiff.

*William Wilhelm* and *Nicholas Heblich*, for appellants, cited, Borlin v. Com., 110 Pa. 459; Bush, Bunn & Co.'s App., 65 Pa. 368.

*S. H. Kaercher, B. W. Cumming, Jr.*, and *George M. Roads* with him, for appellee, cited, In re Spring City, 112 Pa. 258.

PER CURIAM, March 16, 1896:

In disposing of the motion for a new trial, the learned judge of the 23d judicial district, who specially presided at the trial of this case, carefully reviewed the evidence and came to the conclusion that he was right in directing a verdict for the use plaintiff; and, with the view of properly molding the verdict, etc., he made the order of May 11, 1895, appended to his opinion.   Afterwards, on May 22, 1895, judgment on the verdict as molded by him was entered by his direction as the same now appears on the record.   The entry on the record concludes with this saving clause:

" This judgment to be without prejudice to the rights of the

defendants to take their appeal to the Supreme Court upon the merits of the questions involved as to the liability of the sheriff and his bail upon all questions raised on the trial in court, and not as to any question relative to the form of this verdict."

A few days thereafter the defendants appealed, and removed the record to this court. The only subject of complaint is :

" The court erred under all the evidence in directing a verdict for the plaintiff."

This, of course, has involved an examination and consideration of the evidence ; and that has resulted in satisfying us that the learned trial judge committed no error in directing the jury " to return a verdict for the plaintiff." As to the sum named in the verdict, there was an error resulting from miscalculation, but that was corrected in disposing of the motion for new trial, etc., and the proper sum appears in the judgment as entered.

In view of the full and accurate statement and discussion of the evidence contained in the opinion of the learned trial judge above referred to, it is unnecessary for us to fortify the conclusion we have reached by a detailed reference to the evidence. We are satisfied as to the substantial correctness of his application of the law to the undisputed facts as they appear in the record ; and the judgment is therefore affirmed on his opinion.

Judgment affirmed.